No. 11,994.

GIBSON v. SEYMOUR ET AL.

WILL.—*Contingent Devise.*—*Intestacy.*—By one clause of her will a testatrix devised all of her property to her husband for life. Another clause provided that, "If my husband survive me, I desire at his death that all I may own or be possessed of shall go to and become the property of my well beloved step-daughter," naming her. These were the only dispositions 'of this property. The husband died before the death of the testatrix.

*Held,* that as to the property in question the testatrix died intestate.

From the Cass Circuit Court.

*D. D. Dykeman* and *D. C. Justice,* for appellant.

*D. B. McConnell, R. Magee* and *S. T. McConnell,* for appellees.

BLACK, C.—On the 13th of November, 1879, Ruth A. Burrow, then the wife of Joseph M. Burrow, with whom she resided at Logansport, in this State, executed her last will and testament, whereby she made dispositions of property as follows:

"*First.* I direct that all my just debts and funeral·expenses shall be promptly paid, as soon as possible after my death.

"*Second.* I hereby bequeath and devise to my beloved husband, Joseph M. Burrow, all my property, both real and

personal, of every description whatever, for and during his natural life.

"*Thirdly*. At the death of my said husband, should he out-live me, or as soon as may be after my death without the sacrifice of property, I desire that a suitable monument or monuments be put to all the graves; that they may be marked in an unostentatious manner: Harriet Farlow, who died January 30th, 1873; Mary Taintor, who died June 7th, 1873; Mahala Danforth, who died May 29th, 1879; Joseph M. Burrow and Ruth A. Burrow. The names may all be put on one monument if my executor and legatees are so disposed, and no use shall be made of my property or no income appropriated to personal use, until such monument or monuments shall be erected.

"*Fourthly*. If my husband survive me, I desire at his death that all I may own or be possessed of shall go to and become the property of my well beloved step-daughter, Harriet E. Gibson, now living in Lafayette, Indiana, subject to the provision of article third. If I survive my husband, all or anything I may become possessed of through his death I desire shall be divided equally between my step-son, John F. Burrow, and step-daughters, Aletta J. Baker and Harriet E. Gibson. I promised $20 to the W. F. M. Society; I have only paid $5. This I consider a debt, and desire paid; also, desire that a locket worth at least $5 be purchased for my namesake, and my picture be put in it, Ruth A. Washburn, if I have not given it previous to my death."

She appointed John F. Burrow as executor of said will. Her said husband died on the 17th of March, 1880, and she died on the 29th of July, 1880. Her said will was duly admitted to probate.

At the date of the execution of said will the testatrix was the owner in fee simple of certain real estate in Logansport, and she still owned it at her death. She was the second wife of her said husband, by whom she had no children.

This was an action for partition of said real estate, instituted

by the appellee Charles E. Seymour, one of the heirs at law of said testatrix, against another heir at law and her step-children named in the will; and the question involved is, whether said real estate is the property of the appellant, said Harriet E. Gibson, or, as the court below decided, the property of the heirs at law of the testatrix.

By the second clause of the will the property in question was devised to the husband of the testatrix for his life. His death before that of the testatrix prevented the taking effect of this devise. By the second provision of the fourth clause she gave all the property of which she became possessed through his death to her step-children.

Other portions of the will directed the payment of her debts, the erection of a monument or monuments, the payment of what she had promised to the W. F. M. Society, and the purchase of a locket for her namesake; but the only disposition made of the real estate in question except to her husband for his life, was that contained in the first portion of the fourth clause, as follows: " If my husband survive me, I desire, at his death, that all I may own or be possessed of shall go to and become the property of my beloved step-daughter, Harriet E. Gibson, now living in Lafayette, Indiana, subject to the provision of article third."

This language is plain; its meaning is obvious. We are not at liberty to qualify or control such language in a will by conjecture or doubt arising from extraneous facts.

The devise of the real estate in question to the appellant is contingent in form, and no transposition of the language of the will, which does not modify the meaning, can be made so as to render the devise other than a contingent one.

We may conjecture that the testatrix failed through inadvertence to express her intention as she would have done if her attention had been called by another person to the matter about which the parties to this suit are now through it contending. But courts can no more make a portion of a will than they can make an entire will.

We can not say that the testatrix by her will gave the real estate in question to the appellant in fee simple merely subject to the life-estate previously given to the husband of the testatrix. She plainly made the devise of this real estate to the appellant contingent upon an event which did not happen.

She made no expression of intention in regard to this property in the event that she should survive her husband; and there is nothing left for us but to conclude, with the court below, that as to this property she died intestate.

PER CURIAM.—Upon the foregoing opinion, the judgment is affirmed, at the costs of the appellant.

Filed April 25, 1885.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—We have carefully studied the briefs originally filed and those filed on the petition for a rehearing, and can not find any reason for departing from the rule declared in our former opinion.

The rights of the appellant to the property she claims depend upon the construction of the will of her step-mother, Ruth A. Burrow. The will, set out in our former opinion, devises to the appellant's father and the testatrix's husband an estate for life in her property, makes provision for the payment of debts, for the erection of monuments, and for the appointment of an executor. The only provisions in the will which directly affect the appellant are the following:

"*Fourthly.* If my husband survive me, I desire at his death that all I may own or be possessed of shall go to and become the property of my well beloved step-daughter, Harriet E. Gibson, now living in Lafayette, Ind., subject to the provision of article third. If I survive my husband, all or anything I may become possessed of through his death I desire shall be divided equally between my step-son, John F. Burrow, and step-daughters, Aletta J. Baker and Harriet E. Gibson."

If it were not for the earnestness and apparent sincerity of counsel, we should not feel justified in devoting additional

time or space to the question, for, to our minds, it is clear that the provisions of the will are not doubtful or obscure. In one event only is Harriet E. Gibson to take the property of her step-mother, the testatrix, and that is in the event that the husband of the testatrix should survive her. We can not inquire why the step-mother chose to make the devise to her step-child depend upon the contingency of the father's survival. It is not the duty of the courts, nor is it within their power, to search for the reasons which influenced a testator to annex a condition to a devise; their duty is to ascertain whether there is a contingency, and its character and effect. The devise to Mrs. Gibson is made to depend upon the contingency of her father outliving his wife, and the courts can not destroy the force of a clause so clearly and fully framed as the one before us.

There is no absolute devise to Mrs. Gibson, and unless the court inserts such a devise in the will, she can not take the property of the testatrix. Not only is there no absolute devise, but there is a conditional one, and the contingency is the event of the survival of the husband of the testatrix. It is a familiar rule that the express mention of one thing implies the exclusion of all others, and under this rule it must be held that expressly making the devise depend upon the happening of a given event excludes the inference that the devise was intended to be an absolute one.

Mrs. Gibson can only take as the will provides, and as the will makes the devise depend upon a contingency, she can not take absolutely. She can claim only under the will, for she is not an heir, and can take only upon the condition expressly created by the will, and as that condition failed, so, also, did her claim as sole devisee.

We are bound to adhere to the words of the will unless there is doubt, confusion or obscurity, and there is nothing of the kind here. Redfield says there is no rule of construction " of more universal application, both here and in England, than that the plain and unambiguous words of the

will must prevail, and are not to be controlled, or qualified, by any conjectural, or doubtful constructions, growing out of the situation, circumstances, or condition, either of the testator, his property, or his family." 1 Redf. Law of Wills, p. 430.

Another author says: "Devises, limited in clear and express terms of contingency, do not take effect, unless the events upon which they are made dependent happen." 1 Jarman Wills (4 Am. ed.), p. 743.

At another place this author says: "An estate will be construed to be contingent, if clearly so expressed, however absurd and inconvenient may be the consequences to which such a construction may lead, and however inconsistent with what may be conjectured would have been the testator's actual meaning, if his attention had been drawn to these consequences." 1 Jarman Wills, p. 744.

The authorities are not divided upon the proposition that courts can not, except in the clearest cases, change by transposition, alteration, subtraction or substitution, the words of a will, but must take them as they are written. Shimer v. Mann, 99 Ind. 190, see auth. cited pp. 195, 196 (50 Am. R. 82); Rupp v. Eberly, 79 Pa. St. 141; Yearnshaw's Appeal, 25 Wis. 21.

The language of the will gives Mrs. Gibson the whole estate only upon the condition that the husband of the testatrix survives her. No precise form of words is necessary to create a condition. As said in Stilwell v. Knapper, 69 Ind. 558 (35 Am. R. 240): "The word 'condition' is not necessary to the creation of a condition. Any words that convey the proper meaning will create a condition;" see page 570. There are many cases illustrating this general doctrine and applying it to cases like the present. In the well considered case of Yearnshaw's Appeal, supra, the question was considered and decided as we have decided it.

In the case of Illinois Land and Loan Co. v. Bonner, 75 Ill. 315, it was said: "Did Bogle and Trulear take anything under the will? We are of the opinion they did not for the rea-

son that the contingency upon which they were to take never happened. They were to take only 'in case both said sister and brother should die without issue prior to attaining the ages of eighteen and twenty-one respectively.' The sister and brother did both die without issue, but they did not both die prior to their attaining those ages respectively. One did, and the other did not, the brother dying before reaching the age of twenty-one, but the sister, not until after having reached the age of eighteen. The terms of this devise over are clear, and free from the least ambiguity. It seems plain that the devise is contingent upon the fact of both Rosalie and Percy dying before reaching the ages of eighteen and twenty-one respectively. * * * The testatrix did not in her will provide for the events that have happened, that is, of her sister dying over eighteen and the brother under twenty-one. In such case, the court will not provide for the unforeseen events. 'Where the testator, in the disposition of his property, overlooks a particular event, which, had it occurred to him, he would in all probability have provided against, the court will not rectify the omission by implying or inserting the necessary clause; conceiving it would be too much like making a will for the testator, rather than construing that already made.'" 2 Roper Legacies, p. 1464.

We have perhaps cited more authorities upon this branch of the discussion than necessary, but we have been induced to do so by the zeal and earnestness of counsel.

Counsel for appellants complain that their authorities were not discussed, and infer that they were not considered. Their inference is erroneous; it does not follow that because authorities are not discussed in detail, in the opinion, that they have not had consideration.

Many authorities are cited to the effect that courts must ascertain and give force to the intention of the testator, and we yield undoubting assent to this familiar and rudimental doctrine, but we can not perceive that it aids counsel, for all the authorities agree that the intention is to be gathered from

the language of the will; that it must be the testator's intention as thus manifested that is given effect, and not the views of the court as to what the will should have provided, and that the court can not supply words to give the instrument a different meaning from that which the language used ordinarily conveys.

It is contended that the intention of the testatrix was to make a disposition of her entire estate, and, therefore, that she intended to make an absolute devise to Mrs. Gibson. There is in this argument a plain fallacy; the conclusion does not follow from the premise, and the premise is not well assumed. The words of the will give an estate to Mrs. Gibson on a contingency, and not otherwise, and it can not be assumed that the testatrix meant the reverse of what she says. Granting, however, the justice of the assumption, the conclusion does not follow, because the intention was not to dispose of the estate to Mrs. Gibson, except upon a certain event, and the inference is that what was not so disposed of went to the heirs. *Waugh* v. *Riley*, 68 Ind. 482. The presumption in such a case as this is in favor of the heirs, and where an estate is devised to a stranger upon a contingency, the contingency must happen, or the heirs will succeed to the estate of their ancestor. The general rule upon this subject is thus stated: "It is a well known maxim, that an heir at law can only be disinherited by express devise or necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary can not be supposed." 1 Jarman Wills, 465; *Rupp* v. *Eberly, supra.*

We are referred to the cases of *Allen* v. *Mayfield,* 20 Ind. 293, *Richmond* v. *Vanhook,* 3 Iredell Eq. 581, *Dunlap* v. *Dunlap,* 4 Desaussure, 305, *Coleman* v. *Hutchenson,* 3 Bibb, 209, in support of the proposition, that "a legacy to one person for life with remainder to another does not lapse upon the death of the first taker during the testator's life," but these cases, it is evident, can not exert any influence here, for the question is not whether the devise to the husband lapsed,

but whether the contingency upon which Mrs. Gibson was to take ever happened?

We are asked to construe the will "as if Joseph M. Burrow," the husband, "had not been named," but this we can not do, for the words of the will are: "If my husband survive me, I desire at his death that all I may own or be possessed of shall go to and become the property of my well beloved step-daughter, Harriet E. Gibson." To strike out the provision creating the contingency would make the will express a meaning entirely different from what its framer intended. The case of *Jackson* v. *Hoover*, 26 Ind. 511, is essentially different from the present, for there the persons who claimed the estate were the children of the testator, it appeared that he meant to make provision for them all, and there was no language creating a condition as there is here.

The case of *Womrath* v. *McCormick*, 51 Pa. St. 504, is not in point. There the question was whether the remainder was vested or contingent, there was no question as to whether the devise was, or was not, a conditional one. The decision was put upon the doctrine of Mr. Fearne, that "It sometimes happens that a remainder is limited in words which seem to import a contingency, though in fact they mean no more than would have been implied without them, or do not amount to a condition precedent, but only denote the time when the remainder is to vest in possession." Here no estate at all is devised except upon condition that the husband shall survive the testatrix. The question is not when a remainder shall vest, but whether, if the designated contingency does not happen, there is any devise at all. Redfield defines a conditional devise thus: "A conditional bequest is where its taking effect or continuing in operation depends upon the happening or not happening of some uncertain event." 2 Redf. Wills, 283. This describes the devise contained in the will under examination, for the taking effect of the bequest depends upon the contingency of the husband of the testatrix surviving her.

The will does not, as is argued, simply fix the time when the devise shall take effect, but it provides that it shall not take effect at all until the happening of the designated contingency. Until that contingency does happen no estate passes. A standard author says: " Whenever it appears that the happening of an event, or the performance of an act, was intended to operate as a condition to precede the vesting of a legacy or devise, it is essential that the event happens, or the act is done, since no interest will previously vest in the legatee or devisee, as has been shown in the tenth chapter of this treatise." 1 Roper Legacies, 750. 2 Powell Devises, 251. Petition overruled.

Filed Sept. 23, 1885.